IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2020

FILED
03/09/2020
Clerk of the
Appellate Courts

**CAREY R. FAUGHT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 105530    Bobby R. McGee, Judge**

**No. E2019-00436-CCA-R3-PC**

The Petitioner, Carey R. Faught, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief from his jury trial convictions of aggravated burglary, employing a firearm during a dangerous felony, reckless endangerment, two counts of attempted aggravated robbery, and two counts of especially aggravated robbery, and his effective forty-eight-year sentence. He contends that the post-conviction court erred in denying relief on his claim that he received the ineffective assistance of counsel because counsel failed to challenge an impermissibly suggestive photograph lineup. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the Appellant, Carey R. Faught.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme Allen, District Attorney General; Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions result from a home invasion and robbery. The mother of the Petitioner's children contacted the authorities and later testified at the Petitioner's trial that the Petitioner had confessed details of the crimes to her in a telephone conversation. *State v. Carey Faught*, No. E2012-02419-CCA-R3-CD, 2014 WL 12653822, at *1 (Tenn. Crim. App. Mar. 3, 2014). Two accomplices testified about the offenses, including the Petitioner's involvement in them. *Id.* at *1-2. A victim testified that he had identified the Petitioner in a photograph lineup as one of the

perpetrators, although he was unable to identify the Petitioner at the trial. A police officer testified at the trial that the Petitioner was biracial and that the photograph lineup included "'light-skinned' males" who were not white.

The Petitioner's convictions were affirmed on appeal. *See id.* Thereafter, he filed the present post-conviction action, in which he alleged numerous constitutional shortcomings in the conviction proceedings. Because his appeal is limited to the question of whether the post-conviction court erred in denying his claim of the ineffective assistance of counsel related to counsel's failure to challenge the photograph lineup, we will limit our recitation of the evidence to that which is relevant to this issue.

At the post-conviction hearing, the Petitioner testified that the only discovery he saw before the trial was a police report and the photograph lineup from which the victim had identified him. The Petitioner said he advised trial counsel of the Petitioner's concerns that the Petitioner was the only biracial person in the lineup. The Petitioner said that by "biracial," he meant "black and white." He said the other individuals in the photograph lineup were Hispanic. The Petitioner said he pointed out to counsel that although the police report stated "they were looking for two white males, not of Hispanic race," the lineup had been compiled with photographs of five Hispanic individuals. The Petitioner identified the photograph lineup that had been introduced at the trial and agreed he was in the bottom, center position. The Petitioner testified that he had "light-color" hair and blue eyes and that the other individuals in the lineup had black hair and brown eyes. He said he also tried to explain to counsel that the Petitioner's photograph in the lineup was several years old and that his appearance had been different when the photograph had been made. He agreed he had "a little bit of hair" in his photograph in the lineup and said he had been "smaller" in the photograph. He estimated that the photograph had been taken in 2006, whereas the offenses in the present case occurred in 2011.

The Petitioner was unsure whether trial counsel filed a motion to suppress evidence of the victim's identification of him from the photograph lineup. The Petitioner did not recall the victim's identifying him or testifying about the photograph lineup at the preliminary hearing.

The Petitioner testified that trial counsel showed him two versions of the photograph lineup: one that was black and white, and one that was color. He agreed that the color lineup was introduced at the trial. When asked if the skin tones of the other individuals in the lineup were similar or different from his skin tone, he said, "Some of them look similar to me." He acknowledged that some had hairstyles similar to his. He said, however, that his photograph in the lineup did not resemble his appearance at the time of the crimes. He said a viewer could tell his eyes were blue "[a] tad bit" in the photograph and said his eyes were different from the others' eyes.

The Petitioner testified that he did not commit the crimes and said his accomplices and the mother of his children had lied about his involvement. The Petitioner said the victim had been erroneous in the victim's identification of the Petitioner in the photograph lineup.

Trial counsel testified that he had represented the Petitioner in a carjacking case before he represented the Petitioner in the conviction proceedings in this case. Counsel said that in the previous case, the photograph lineup was "a central issue" because the individuals other than the Petitioner who were depicted were "five dark-skinned African-Americans." Counsel did not think he had discussed filing a motion to suppress with the Petitioner in the present case because he had not thought a sufficient disparity in skin color existed in the lineup and because he thought the victim would be unable to identify the Petitioner at the trial. He thought the victim ultimately had not been able to identify the Petitioner at the trial.

After receiving the evidence, the post-conviction court noted that the victim had been unable to identify the Petitioner at the trial, although the victim testified that he had identified the Petitioner from a photograph lineup. The court found that the Petitioner had not established by clear and convincing evidence that he had received the ineffective assistance of counsel. The court found that the Petitioner had presented no evidence of prejudice from trial counsel's failure to challenge the photograph lineup. The court noted the eyewitness testimony that the Petitioner had been present for the crime and had been the shooter and the Petitioner's confession to the mother of his children that he had shot the victim.

On appeal, the Petitioner contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claim relative to the lack of a motion to suppress the photograph lineup.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Petitioner argues that trial counsel was ineffective by failing to challenge the photograph lineup because it was impermissibly suggestive in that the individuals depicted other than the Petitioner were Hispanic, whereas the Petitioner is biracial, and the photograph of the Petitioner was several years old and did not accurately depict his appearance at the time of the crimes.

Trial counsel testified that he had challenged a photograph lineup in a previous case in which he represented the Petitioner but that he did not think a sufficient basis existed for suppression in this case because, in his view, no sufficient disparity in skin color between the Petitioner and the other individuals existed in the lineup. Also, counsel thought the victim would not be able to identify the Petitioner at the trial.

The photograph lineup was received as an exhibit at the post-conviction hearing. It depicts six young men, all of whom have short haircuts and short facial hair. The

-4-

Petitioner's skin tone appears neither substantially lighter nor darker than any of the other individuals. To the extent that the Petitioner testified that he had blue eyes, his eye color is not discernible as blue in the lineup.

The evidence supports the post-conviction court's determination that the Petitioner did not receive the ineffective assistance of counsel. Trial counsel made an informed decision not to challenge the lineup because he did not believe it was impermissibly suggestive and because he did not think the victim would be able to identify the Petitioner at the trial. In addition, even if the lineup had been suppressed, other evidence existed to identify the Petitioner as a participant and as the shooter, including the testimony of the Petitioner's accomplices and the mother of the Petitioner's children, to whom the Petitioner had confessed. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE